# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WAYNE E. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-06-2874 |
| | § | |
| COUNTRYWIDE HOME LOANS, INC., | § | |
| BANKER'S TRUST OF CALIF., | § | |
| DEUTSCHE BANK NATIONAL | § | |
| TRUST CO., SECRETARY OF | § | |
| VETERANS AFFAIRS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

The plaintiff, Wayne Williams ("Williams"), sued the defendants, Countrywide Home Loans Inc. ("Countrywide"), Banker's Trust of California ("Banker's Trust"), Deutsche Bank National Trust Company ("Deutsche Bank") (together, the "lender defendants"), and the Secretary of Veterans Affairs. Williams alleges that the lender defendants violated federal and state statutes governing mortgage documents, breached the mortgage lending contract, violated the automatic stay that was triggered when Williams filed for bankruptcy, and committed other offenses related to his mortgage loan. Williams alleges that both the Note and Deed of Trust on his home are invalid and that the lender defendants wrongfully foreclosed on that home.

The lender defendants have moved for summary judgment on Williams's claims. (Docket Entry No. 6). The motion is based on the statute of limitations and on Williams's

failure to prove an essential element of each claim.  Williams has responded (Docket Entry No. 11) and the lender defendants have replied (Docket Entry No. 12).

Based on the motion, the response, and the reply; the pleadings; the parties' submissions; and the applicable law, this court grants the lender defendants' motion for summary judgment on all claims and enters final judgment by separate order.  The reasons are explained in detail below.

## I.    Background

On July 25, 1995, Williams signed a Deed of Trust Note with the Secretary of Veterans Affairs and a Deed of Trust securing payment on the Note with real property located on Claridge Drive, Houston, Texas.  The Note amount was $83,566.00.  Countrywide was the servicer for the mortgage loan.

On September 19, 1995, Williams received a letter from Countrywide stating that the loan was being transferred.  The letter stated:

> Your home loan is in the process of being transferred to Countrywide . . . The effective date of your transfer is Sept. 30, 1995.  Beginning Oct. 1, 1995, your payments should be mailed to Countrywide.

(Docket Entry No. 1, Ex. C–2).  The Note and Deed of Trust were transferred to Banker's Trust, which acted as trustee for "Lender Mortgage Trust 1995-3."  Deutsche Bank purchased Banker's Trust in 1999 and became its successor-in-interest.

Williams defaulted on his monthly payments to Countrywide.  In early 2003, Countrywide moved to foreclose on Williams's property.  Williams filed for bankruptcy in

2

January 2003, December 2003, May 2004, and June 2005.  The first three bankruptcies were dismissed because Williams did not make the confirmation payments to the trustee.  During the third bankruptcy, the court entered an order stating that "in the event Debtor's case is dismissed and Debtor or Co-Debtor files another petition for an order of relief under Title 11, then the automatic stay of 11 U.S.C. §§ 362 and 1301 shall not apply to [Countrywide] and [the Property] described above."  (Docket Entry No. 6 at 5).

The bankruptcy court dismissed Williams's third bankruptcy case in February 2005. Williams filed a fourth bankruptcy petition on June 1, 2005.  Countrywide reposted the property for sale on June 7, 2005.  Countrywide and Williams reached an agreement under which the sale was rescinded.  The bankruptcy court entered an agreed order that conditioned the automatic stay on Williams continuing to make mortgage payments.  Williams defaulted. The property was sold to Deutsche Bank in a foreclosure sale on April 4, 2006.

Williams filed this suit in state court in April 2006.  Countrywide was served with process on August 8, 2006.  (Docket Entry No. 1).  Banker's Trust and Deutsche Bank timely joined Countrywide in removing the case based on federal question jurisdiction.  The Secretary of Veterans Affairs and John Does 1-10 were not served.

Williams alleges that the lender defendants violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*.  Williams alleges that he hired a professional consumer advocate to analyze the loan documents.  The consumer advocate found that the lender defendants failed to make certain required disclosures.  (Docket Entry No.1, Ex. C–1at 8). Williams alleges that the lender defendants did not inform him of his right to rescind the

contract and failed to provide him with the required three-day cooling-off period.  Williams also alleges that the lender defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 192 (g)(a)(1)–(5); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 (b)(2)(B); the UCC, TEX. BUS. & COM. CODE §§ 9.101 *et seq*; breached their fiduciary duty; violated the Equal Credit Opportunity Act, 12 C.F.R § 202.14(a); breached the mortgage loan contract; violated the automatic bankruptcy stay; violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.46; and committed acts that were "unfair." Williams seeks damages, relief from the foreclosure, and other equitable relief.  The lender defendants have moved for summary judgment on all claims.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports the essential element or claim.  *Celotex*, 477 U.S. at 330.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it

does not need to negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. Exxon Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.    Analysis

#### A.    The Truth-in-Lending Act Claims

The TILA is a federal consumer protection statute that provides consumers with a cause of action against creditors that fail to make required disclosures. 15 U.S.C. §§ 1601 *et seq*.; 12 C.F.R. § 226 ("Regulation Z").  The purpose of the TILA is to "promote the informed use of consumer credit by requiring disclosures about its terms and costs.  Regulations give consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes." 12 C.F.R. § 226.1(b).  Regulation Z applies to each individual or business that offers or extends credit when four conditions are met:

    (i)      credit is offered or extended to consumers;

    (ii)     offering or extension of credit is done regularly;

    (iii)    credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and

    (iv)    credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c).

The TILA applies in this case.  Williams meets the requirements of a "consumer"[1] and the lender defendants meet the definition of a "creditor."[2]  The lender defendants offered Williams credit; the lender defendants regularly offer or extend credit (Countrywide is a loan servicer); the credit was subject to a finance charge and payable in more than four installments; and the credit was used primarily for personal, family, or household purposes.

Under the TILA, consumers who place a mortgage on their home have the right to rescind the contract for up to three days after the loan transaction is consummated.  Section 1635(a) provides:

> In the case of any consumer credit transaction in which a security interest . . . is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and recision forms.

15 U.S.C. § 1635(a).  Notice of the right to rescind must be given when the consumer signs the loan papers.  *Id.*

Williams alleges that the lender defendants violated the TILA because they failed to provide him notice of his right to rescind within the three-day cooling-off period.  Williams

---

[1]  A person is a "consumer" if the "party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1602(h).

[2]  A "creditor" is a person "who (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness, or if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(f)(1)–(2).

claims that the lender defendants did not give him recision forms and did not otherwise "clearly and conspicuously" disclose the right to rescind.

Under the TILA, a consumer's right to rescind expires three years after the transaction is consummated.

> An obligor's right of recision shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor.

15 U.S.C. § 1635(f).  In *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), the United States Supreme Court held that § 1635(f) was not a statute of limitations but an "expire provision." *Id.* at 417.  In *Beach*, the Court rejected the debtor's efforts to rescind the mortgage contract because the three-year expiration period had passed.  In 1986, the debtor obtained a loan from Great Western Bank and secured it by executing a mortgage on his residence.  In 1991, the debtor defaulted on his mortgage payments.  In 1992, the bank began the foreclosure process, and the debtor responded by filing a TILA claim against it.  The Court held that the debtor was entitled to actual damages under § 1640(a)(1) and statutory damages under § 1640(a)(2), but that his right to rescind had expired.  "The quite different treatment of recision stands in stark contrast to this [Section 1640], however, there being no provision for recision as a defense that would mitigate the uncompromising provision of [Section] 1635(f) that the borrower's right 'shall expire' with the running of the time." *Id.* at 418.  "We respect Congress's manifest intent by concluding that the Act permits no federal

right to rescind, defensively or otherwise, after the 3-year period of Section] 1635(f) has run." *Id.* at 419. Like the debtor in *Beach*, Williams brought his TILA claim more than three years after the loan was consummated. The loan was consummated in 1995. Williams did not bring suit until 2006. Williams's right to recision has expired.

Williams also seeks damages under 15 U.S.C. § 1640. Four types of damages may be recovered under the TILA. First, the injured party may recover actual damages. 15 U.S.C. § 1640(a)(1). Second, the injured party may recover "statutory damages." *Id.*, § 1640(a)(2). In an individual action, statutory damages may be "twice the amount of any finance charge in connection with the transaction." *Id.* Statutory damages perform a different function than actual damages.[3] TILA plaintiffs "need not show that they sustained actual damages stemming from the TILA violations proved before they may recover the statutory damages the Act also provides for. The statutory damages are explicitly a bonus for the plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations." *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 647 (8th Cir. 1980). Third, the injured party may recover litigation costs, including reasonable attorney's fees. *Id.*, § 1640(a)(3). Fourth, if the other party failed to comply with § 1639, the injured party may recover the finance charges and fees he paid. *Id.*,

---

[3] "Conceptually, however, statutory and actual damages perform different functions: statutory damages are reserved for cases in which the damages caused by a violation are small or difficult to ascertain. Actual damages may be recovered where they are probably caused by the violation. In this way, the damage measures are complementary rather than duplicative." *Perrone v. Gen. Motors Acceptance Group*, 232 F.3d 433, 436 (5th Cir. 2000).

§ 1640(a)(4).  Williams seeks actual damages under § 1640(a)(1), statutory damages under § 1640(a)(2), and litigation costs under § 1640(a)(3).

Williams argues that he is entitled to damages because the lender defendants violated the TILA by failing to inquire about his income.  Under the TILA, "there is a presumption that a creditor has violated [the act] if the creditor engages in a pattern or practice of making loans subject to § 226.32 without verifying and documenting consumers' repayment ability." 12 C.F.R. § 226.34(a)(4).  Williams alleges that the lender defendants violated this provision because the loan application did not require him to state his income.

Williams also alleges that the lender defendants violated the TILA when they failed to disclose the total sale price.  (Docket Entry No. 1, Ex. C–1 at 20).  The TILA requires that "for each transaction, the creditor shall disclose the following information as applicable . . . [including the] total sale price." 12 C.F.R. § 226.18(j).  The "total sale price" is "the sum of the cash price, the items described in paragraph (b)(2) [any other amounts that are financed by the creditor and are not part of the finance charge], and the finance charge disclosed under paragraph (d) of this section." *Id.*  Williams alleges that the lender defendants did not supply this information.

Williams further alleges that the lender defendants violated the TILA because they failed to give him notice of acceleration of the Note before foreclosing on the property. (Docket Entry No. 1, Ex. C–1 at 24).  Under the TILA, the lender must disclose the date "by which or the time period within which the new balance or any portion of the new balance must be paid to avoid additional finance charges."  12 C.F.R. § 226.7(j).  The lender must

10

also provide the consumer with periodic statements that disclose other related information, such as previous balances or periodic rates. *Id.*, § 226.7(a)–(k). Williams claims that the lender defendants did not provide this information.

The lender defendants seek summary judgment on the basis of limitations. The general statute of limitations for damages claims under the TILA is one year after the violation. "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of occurrence of the violation." 15 U.S.C. § 1640(e). "The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations." *In re Smith*, 737 F.2d at 1552. The credit transaction is consummated when "a contractual relationship is created between [a creditor and consumer]." *Bourgeois v. Haynes Construction Co.*, 728 F.2d 719, 720 (5th Cir. 1984). The violation in this case occurred in September 1995 when the loan transaction was consummated. Williams did not sue until eleven years later.

In his affidavit, Williams stated that when he signed the loan documents in 1995, he knew he was not receiving important information:

> When we left the VA administration office I felt like a lack of information was given. And I wasn't given a proper explanation of the negotiating process, everything I had just underwent [was] confusing, but I was happy that I had just closed on my home.

(Docket Entry No. 1, Williams Aff.).

11

The cases recognize a "recoupment exception" to the limitations bar on TILA actual damages claims. *See Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). In *Moor*, the plaintiff brought a claim under the TILA against a lender for damages and sought rescission of the loan contract. *Id.* The plaintiff in *Moor* based his claims on the lender's failure to disclose information when the loan was executed. *Id.* Like Williams, the plaintiff in *Moor* received a loan secured by a deed of trust on his property and later defaulted on the mortgage payments to the lender. *Id.* The lender then moved to foreclose. *Id.* In April 1985, the plaintiff in *Moor* sued the lender, seeking recision of the loan under 15 U.S.C. § 1635(a), statutory damages under § 1640(a)(2)(A), and attorney's fees under § 1640(a)(3). *Id.* The plaintiff did not seek actual damages under § 1640(a)(1). The court found that the lender violated the TILA by failing to make required disclosures. While the court recognized that the lender violated the TILA, it nonetheless rejected the plaintiff's claims because the statute of limitations had run. *Id.* The transaction in *Moor* occurred in February 1978. The plaintiff sued seven years later. The damages claims were barred by the one-year statute of limitations, 15 U.S.C. § 1640(e). The recision claim was barred by the three-year statute of limitations, 15 U.S.C. § 1635(f).

The court held that the plaintiff in *Moor* did not meet the "recoupment" exception for damages claims to the TILA general statute of limitations. To meet the "recoupment" exception, a party must show that the TILA claim was brought as a recoupment or set-off claim in response to a creditor's "action to collect the debt." 15 U.S.C. § 1640(e). "This subsection does not bar a person from asserting a violation of this subchapter [§ 1640] in an

action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." *Id.* The Fifth Circuit held that "a recoupment or set-off claim will be exempt from the one-year statute of limitations only when the debtor's claim is raised as a defense." *Moor*, 784 F.2d at 633.

The United States Supreme Court defines "recoupment" as "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Realty Assoc. Sec. Corp. v. O'Connor*, 295 U.S. 247, 262 (1935). Recoupment has also been explained as the following:

> Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.

*Household Consumer Discount Co. v. Vespaziani*, 415 A.2d 689, 694 (Pa. 1980). A "set-off claim" is "a counter demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action." *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) (quoting Ballentine's Law Dictionary 1167 (3d ed. 1969)).

To meet the requirements for recoupment, a debtor must show that: (1) the TILA violation and the debt are products of the same transaction; (2) the debtor asserts the claim as a defense; and (3) the main action is timely. *Moor*, 784 F.2d at 643 (citing *In re Smith*, 737 F.2d at 1553). In *Moor*, the court held that the plaintiff/debtor failed to establish the second and third elements because the debtor's claim was not a defensive response. "When the debtor hales the creditor into court, as Moor has done in this case, the claim by the debtor is affirmative rather than defensive. As such, it is subject to the one and three-year limitations provisions." *Moor*, 784 F.2d at 633.

The lender defendants argue that, like *Moor*, Williams's suit was affirmative rather than defensive because he brought them into court. *Moor*, 784 F.2d at 633. Williams argues that his actions were defensive because he filed his complaint in response to the lender defendants' foreclosure sale.

The mere fact that the debtor is the plaintiff in a TILA case does not preclude a finding that the claim was raised defensively. *Matter of Coxson*, 43 F.3d 189, 194 (5th Cir. 1995). The plaintiff in *Coxson* obtained a loan by executing a deed of trust on his property, defaulted on his mortgage payments, and filed for bankruptcy. *Id.* The bankruptcy court entered an agreed order that conditioned the automatic stay on the debtor's timely mortgage payments. A few months after the order was entered, the defendants sent Coxson notice that he was in default and moved to foreclose. In response to the defendants' foreclosure efforts, Coxson filed an adversary proceeding in the bankruptcy court, claiming that the loan documents violated the TILA. The court held that Coxson's acts were defensive because

14

they were in response to the defendants' proof of claim filed in the bankruptcy court. *Id.* (citing *In re Jones*, 122 B.R. at 249) (holding that the recoupment claim was raised defensively in response to the creditor's foreclosure efforts). "[T]he filing of a proof of claim, by its very nature, is an action to collect a debt." *In re Jones*, 122 B.R. at 250. "The right of a debtor in bankruptcy to invoke the doctrine of recoupment to reduce a secured proof of claim of a mortgage lender by the amount of statutory TILA damages has been recognized again and again in case law." *In re Woolaghan*, 140 B.R. 377, 383 (Bankr. W.D. Pa. 1992).

The present case is distinguishable from *Coxson* and *In re Woolaghan*. While Williams satisfies the first element of the *In re Smith* test, his claim fails the second element. Williams is not seeking to reduce the sums owed to the lender or to reduce its recovery, but is instead seeking affirmative relief for an independent claim.

In addition, Williams has not alleged or identified facts that would allow him to recover actual rather than statutory damages. Courts have held that when the debtor can prove only statutory damages, the recoupment exception does not apply. *In re Sallings*, 357 B.R. 646, 649 (Bankr. N.D. Ala. 2007). To recover actual damages, a consumer must show that: (1) he relied on the particular terms; (2) the disclosure violation deterred him from inquiring into other alternatives; and (3) the alternatives would save money. *Perrone,* 232 F.3d at 436. "In essence, the statute is addressing and seeking to combat detrimental reliance." *Id.* All Williams has done is request actual damages; that is not enough to satisfy

15

the *Perrone* test.  A claim for statutory damages is not asserted "as a defense to or denial of the creditor's claim, [and] it cannot be classified as a recoupment."  *Id.* at 650.

Williams's claim also fails the second element of the *In re Smith* test because he did not timely file a TILA claim in response to the lender defendants' foreclosure efforts. Instead, Williams filed bankruptcy petitions four times in response to notices of foreclosure. He did not assert a TILA claim until his use of the bankruptcy process to avoid foreclosure finally proved unavailing.  In *Coxson*, by contrast, the debtor filed his TILA claims when the creditor first sought to foreclose.  43 F.3d 189.  Similarly, in *In re Jones*, the debtor filed his TILA claim in response to the creditor's proof of claim "in order to limit the extent of recovery by [the creditor] on its claim."  122 B.R. at 250.

In both *Coxson* and *In re Jones*, the courts held that the debtors met the recoupment exception because they promptly raised their TILA claims in response to the creditor's initial effort to foreclose or assert proof of claim.  Williams did not raise his TILA complaint as a defense to the lender defendants' foreclosure notice in January 2003, December 2003, May 2004, or June 2005.  In contrast to *Coxson* and *In re Jones*, Williams waited until after the bankruptcy court allowed the foreclosure sale to occur.  Williams did not file his TILA claims until April 2006.  This chronology makes it clear that Williams's claims for TILA damages were not raised defensively to reduce the amount of the lender defendants' claims, but as an affirmative claim.

The general statute of limitations for damages under TILA has run.  Because Williams's claim was not raised defensively, he does not meet the recoupment exception.

16

The lender defendants' summary judgment motion on the TILA claims is granted on the basis of limitations.

### B.    The Fair Debt Collection Practices Act Claim

The purpose of the Fair Debt Collection Practices Act ("FDCPA") is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  If the court finds that a party has violated the FDCPA, the court may hold that party liable for monetary damages.  *Id.*, § 1692(k).

Williams alleges that the lender defendants violated the FDCPA when they attempted to collect a debt without first obtaining verification.  Williams claims that the lender defendants did not provide him with the following information required under the FDCPA:

> (1)    amount of the debt;
>
> (2)    name of the creditor to whom the debt was owed;
>
> (3)    statement that unless the plaintiff, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the defendant;
>
> (4)    statement that if the plaintiff notifies the defendant in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the defendant will obtain verification of the debt or a copy of a judgment against the plaintiff and a copy of such verification or judgment will be mailed to the plaintiff by the defendant; and

17

(5)     statement that, upon the plaintiff's written request within the thirty-day period, the defendant will provide the plaintiff with the name and address of the original creditor, if different form the current creditor.

15 U.S.C. § 1692(g)(a)(1)–(5).  Williams claims that the lender defendants violated the FDCPA by using "unfair or unconscionable" means to collect or attempt to collect a consumer debt.  *Id.*, § 1692(f).

Williams's FDCPA claims fail because the lender defendants are not "debt collectors" under the statute.   The term "debt collectors" refers to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).  That term does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.*, § 1692(a)(6)(A). Mortgage companies collecting debts are not "debt collectors."  *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the legislative history of the act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned).[4]  Because the lender defendants are not "debt collectors" as defined by the FDCPA, Williams's claim fails as a matter of law.

---

[4]  Williams also fails to prove an essential part of the Section 1692(f) claim because he does not identify what actions were "unconscionable" or "unfair."

18

Williams also alleges that the lender defendants violated the FDCPA because Deutsche Bank lacked standing to foreclose on his property.  (Docket Entry No. 11 at 1–2). In September 1995, Williams executed "Vendee Mortgage Trust 1995-3."  When Deutsche Bank foreclosed on Williams's property in 2006, it claimed that it was acting under "Trust 1994-2."  Williams claims that this discrepancy prevented Deutsche Bank from foreclosing on his property.

The apparent clerical or typographical error in the foreclosure documents did not deprive Williams of the due process afforded to debtors under the Texas Property Code and did not prevent Deutsche Bank from lawfully foreclosing.  Williams received notice of default and acceleration and was given notice of the foreclosure sale under the Texas Property Code.  The foreclosure notice and sale were not otherwise defective.  *Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796, 799 (Tex. App.—El Paso 1979, writ ref'd n.r.e.) (stating that the purpose of the foreclosure statute is to provide a minimum level of protection for the debtor).  The clerical or typographical error did not change the fact that Deutsche Bank had the power to foreclose on Williams's property if he defaulted in his mortgage payments.  Jacob Bass, the manager in the servicing/acquisitions department of Countrywide Home Loans, stated in his affidavit that Deutsche Bank was the proper entity to foreclose on Trust 1995-3 and 1994-2.[5]  There is no competent controverting evidence.

---

[5] "As successor-in-interest to Bankers Trust Company of California, N.A., Deutsche Bank National Trust Company is also the trustee for Vendee Mortgage Trust 1994-2.  As such, Deutsche Bank National Trust Company is the trust entity with authority to enforce the notes and deeds of trust held in both Vendee Mortgage 1994-2 and 1995-3."  (Docket Entry No. 12, Bass's Aff., ¶ 3).

Williams further alleges that the lender defendants should be held liable because their attorneys violated the FDCPA.  This claim fails because vicarious liability has not been extended to lenders in the context of FDCPA claims.  *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'").

The lender defendants are entitled to summary judgment on Williams's FDCPA claims.

### C.      The Real Estate Settlement Procedures Act Claim

The Real Estate Settlement Procedures Act ("RESPA") is a federal statute designed to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of this country."  12 U.S.C. § 2601(a).  The goal is to promote "more effective advance disclosure to home buyers and sellers of settlement costs."  *Id.*, § 2601(b)(1).

Williams alleges that the lender defendants violated the RESPA by failing to meet the statute's timing requirements.  (Docket Entry No. 1, Ex. C–1 at 11).  In particular, Williams alleges that the lender defendants violated the RESPA's 15-day rule.  Under the RESPA, the lender must give notice to the borrower "not less than 15 days before the effective date of

transfer of the servicing of the mortgage loan."  12 U.S.C. § 2605(b)(2)(B).  The lender must "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."  *Id.*, § 2605(b)(1).  "Effective date of transfer" means "the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan."  *Id.*, § 2605(i)(1).  Countrywide, the loan servicer, sent a letter to Williams on September 19, 1995 stating that the loan was in the process of being transferred.  (Docket Entry No. 1, Ex. C–1 at 29).  Taking this as the "effective date of the transfer," Williams alleges that the defendants did not give him the required notice.

Williams's claim is barred under the three-year statute of limitations.  The RESPA provides:

> Any action pursuant to the provisions of section 2605 [the 15-day rule], 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation.

12 U.S.C. § 2614.  The violation of the 15-day rule occurred in 1995.  Williams did not sue until 2005.  Because Williams filed suit more than three years after the violation of the 15-day rule, he is barred from recovery.  The defendants are entitled to summary judgment on this claim.

### D.     The Uniform Commercial Code ("UCC") Claim

Williams alleges that the lender defendants violated Article 9 of the UCC because they failed to acquire a UCC-1 lien on his property.[6]   (Docket Entry No.1, Ex. C–1 at 24). Williams also alleges that the lender defendants never had him sign UCC-1 lien papers.  (*Id.*).

Article 9 of the UCC does not apply to the creation or transfer of a security interest in real property.  TEX. BUS. & COM. CODE § 9.109(d)(11); *Kimsey v. Burgin*, 806 S.W.2d 571, 576 (Tex. App.—San Antonio 1991, writ denied) ("Chapter 9 does not apply to the creation or transfer of an interest in or lien on real estate."); *Huddleston v. Texas Commerce Bank-Dallas*, 756 S.W.2d 343, 347 (Tex. App.—Dallas 1988, writ denied).

To secure the Note for the loan, Williams executed a Deed of Trust secured by his residential property.  Executing a deed of trust results in the "creation or transfer of an interest in or lien on real property."[7]  Because this case involves the "creation or transfer of an interest in or lien on real property," Williams cannot recover under TEX. BUS. & COM. CODE §§ 9.101 *et seq*.  The lender defendants are entitled to summary judgment on Williams's UCC claim.

---

[6] Texas adopted Chapter 9 of the UCC through TEX. BUS. & COM. CODE §§ 9.01 *et. seq*.  *Merritt-Campbell, Inc. v RxP Products, Inc.*, 164 F.3d 957, 964 (5th Cir. 1999).

[7] A "mortgage" means "a consensual interest in real property, including fixtures, that secures payment or performance of an obligation."  TEX. BUS. & COM. CODE § 9.102(a)(55).

### E.      The Breach of Fiduciary Duty Claim

Under Texas law, the elements of a cause of action for breach of fiduciary duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiffs; and (3) the defendant's breach resulted in injury to the plaintiff. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). Williams's breach of fiduciary claim fails to meet these elements.

A cause of action for breach of fiduciary duty requires a fiduciary relationship between the parties. "In certain formal relationships, such as an attorney-client or trustee relationships, a fiduciary duty arises as a matter of law." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). However, "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–177 (Tex. 1997). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

Texas courts have held that the relationship between a borrower and lender is not a fiduciary one. *1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital,* 192 S.W.3d 20, 36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Generally, the relationship between a borrower and a lender is an arm's length business relationship in which both parties are looking out for their own interests."); *Mfg. Hanover Trust Co. v. Kinston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston. [1st Dist.] 1991, no writ)

23

(holding as a general rule that a "bank and its customers do not have a special or confidential relationship").

Williams's claim also fails the second and third elements necessary for a breach of fiduciary duty claim.  Although Williams alleges that the lender defendants breached their fiduciary duty, he does not specify what duty was breached or what injury was caused.  Williams simply alleges that the lender defendants breached their fiduciary duty because "arguably the lender has the role of advisor and knows or should have known the borrower trusted him.  In the alternative, the lender created a quasi-fiduciary relationship of trust and confidence, which at least gives rise to a duty of disclosure."  (Docket Entry No. 1, Ex. C–1 at 35).  The fact that a person trusts another "does not transform their business arrangement into a fiduciary relationship." *Meyer*, 167 S.W.3d at 331.  Because Williams fails to raise a fact issue as to all three elements of his fiduciary duty claim, the defendants' summary judgment motion is granted.

### F.    The Equal Credit Opportunity Act Claim

Under the Equal Credit Opportunity Act ("ECOA"), a creditor must "provide a copy of an appraisal report to an application for credit that is to be secured by a lien on a dwelling."  12 C.F.R. § 202.14(a).  The creditor must either (1) deliver the report or (2) give notice to the borrower that he or she has the right to receive the report. *Id.*, § 2601(a)(1)–(2).  Because Williams's loan was secured by a lien on his home, the lender defendants had a duty to provide him a copy of this report.  Williams alleges that the lender defendants failed to do so.  The ECOA provides that "any creditor that fails to comply with a requirement imposed

by the Act or this regulation is subject to civil liability for actual and punitive damages in individual or class actions."  12 C.F.R. § 202.17(b).

Williams's ECOA claim is barred by the statute of limitations.  The ECOA provides:

> A civil action under the Act or this regulation may be brought in the appropriate United States district court without regard to the amount in controversy or in any other court of competent jurisdiction within two years after the date of the occurrence of the violation, or within one year after the commencement of an administrative enforcement proceeding or of a civil action brought by the Attorney General of the United States within two years after the alleged violation.

12 C.F.R. § 202.17(b)(2).  The alleged violation occurred in September 1995 when the Note and Deed of Trust were transferred.  Williams did not bring suit until April 2006, eleven years later.  The lender defendants are entitled to summary judgment on the ECOA claim on the basis of limitations.

## G.    The Breach of Contract Claim

Williams alleges that the lender defendants breached the Note and Deed of Trust by wrongfully foreclosing on his property.  (Docket Entry No. 1, Ex. C–1 at 26).  Williams alleges that the lender defendants failed to give him notice of acceleration.  Williams claims that the contract required the lender defendants to give him notice of acceleration before foreclosing, citing the following provision:

> If all or any part of the property or any interest in it is sold or transferred . . . without Lender's prior written consent, Lender is in breach of contract if Lender exercises and [sic] option to accelerate without providing notice not less than 30 days from the date the notice is delivered or mailed within stating that Borrower must pay all sums secured by the Security Instrument.

25

(Docket Entry No. 1, Ex. C–1 at 27).  The provision that Williams cited is not an acceleration clause but a "due-on-sale" clause.[8]  "A 'due-on-sale' clause is a common provision in deeds of trust and mortgages.  It gives a lender the right to demand full payment of the balance due on the loan secured by the deed of trust or mortgage if the borrower sells his interest in the property.  In effect, it prohibits the would-be buyer of the property from assuming the existing loan without prior approval of the lender."  *Sims v. First Gibraltar Bank*, 83 F.3d 1546, 1548 (5th Cir. 1996).  An acceleration clause specifies that if the debtor defaults on his mortgage payments, the lender may foreclose on the property.  "The acceleration clause permits the lender to call due, upon default by the borrower, the entire 'indebtedness' of the borrower."  *Bernie's Custom Coach of Texas, Inc. v. Small Business Admin.*, 987 F.2d 1195, 1197 (5th Cir. 1993).

In addition, the Note and Deed of Trust provided for a waiver of notice of acceleration:

> If any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such installment, at the option of the holder, this note shall become immediately due and payable without notice and the lien given to secure its payment may be foreclosed.

(Docket Entry No. 6, Ex. 1 at 1).

---

[8] A "due-on-sale" clause has also been defined as a "mortgage provision giving the lender the option to accelerate the debt if the borrower transfers or conveys any part of the mortgaged real estate without the lender's consent."  BLACK'S LAW DICTIONARY 538 (8th ed. 2004).

The lender defendants did not breach the contract when they foreclosed on the property. The defendants are entitled to summary judgment on the breach of contract claim.

### H.    The Breach of the Automatic Stay Claim

The filing of a petition in bankruptcy operates to stay actions and proceedings against the debtor. 11 U.S.C. § 362(a). "The stay is effective upon the filing of the petition even though the parties have no notice of its existence." *Huddleston v. Texas Commerce Bank-Dallas*, 756 S.W.2d 343, 345 (Tex. App.—Dallas 1998, writ denied). In general, acts taken in violation of the automatic stay are void and without legal effect. *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940). However, "the bankruptcy court may take some action, such as annulling the stay, to retroactively validate actions taken in violation of the stay." *Clause Regis Vargo Enter.*, *Inc. v. Bacarisse*, 578 S.W.2d 524, 528 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). A foreclosure sale conducted in violation of the automatic stay remains invalid unless the bankruptcy court annuls the stay. *Id.*

A bankruptcy court's dismissal of a bankruptcy proceeding terminates the automatic stay. "[U]nless the court orders otherwise, dismissal of a bankruptcy case revests property in the entity in which the property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3). The "dismissal of a petition terminates [the] automatic stay and restore[s] rights of creditor to their position as of commencement of the case." *Huddleston*, 756 S.W.2d at 346.

Williams filed four bankruptcies. The bankruptcy court dismissed the first three. Williams filed his fourth bankruptcy petition on June 1, 2005. Although Countrywide posted

Williams's property for foreclosure and sold it on June 7, 2005, Countrywide and Williams agreed to rescind the sale.  The automatic stay was conditioned on Williams making the mortgage payments.  Under the court order, if Williams defaulted in his payments, the defendants had the right to foreclose on the property:

> In the event that Movant does not receive any payments by the dates set forth . . . Movant shall send written notice . . . to Debtor, Counsel for Debtor/Debtors, and allow a 15-day period from the date of such written notice to cure such delinquent payments. . . . In the event Debtor fails to cure such delinquent after one notice of default, the Automatic Stay shall terminate as to the Movant without further recourse to this Court and Movant shall be allowed to take any and all steps necessary to exercise any and all rights [including foreclosure] it may have.

(Docket Entry No. 6, Ex. 7).

When Williams defaulted on his payments in April 2006, the automatic stay was lifted.[9]  The property was sold to Deutsche Bank in a foreclosure sale on April 4, 2006. Because the automatic stay was conditional, and because Williams did not satisfy the condition, the lender defendants did not violate the automatic stay when they foreclosed on the property.  The automatic stay lasted only as long as Williams made his mortgage payments.  As soon as Williams defaulted in those payments, the automatic stay was lifted. The lender defendants did not foreclose on the property until after Williams defaulted on his

---

[9] "In the event Debtor files another petition for an order of relief under Title 11, then the automatic stay of 11 U.S.C. § 362(a) shall not apply to Movant and the property described above."  (Docket Entry No. 6, Ex. 7).

mortgage payments.  The lender defendants did not wrongfully foreclose on the property. They are entitled to summary judgment on this claim.

### I.      The Texas Deceptive Trade Practices Act Claim

The purpose of the Texas Deceptive Trade Practices Act ("DTPA") is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."  TEX. BUS. & COM. CODE § 17.44(a).  To maintain a private cause of action under the DTPA, the plaintiff must be a consumer.[10]  *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex. 1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex. 1981); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex. 1980).

The DTPA applies to a loan transaction if the borrower's objective is to use the loan to purchase goods or services.  *La Sara Grain v. First Nat'l. Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *Flenniken,* 661 S.W.2d at 707 (holding that the lender was subject to the DTPA because the borrower's purpose in obtaining the loan was the purchase of a house).  "Goods" are defined as "tangible chattels or real property purchased or leased for use." TEX. BUS. & COM. CODE § 17.45(1).  "Services" are defined as "work, labor, or service purchased or leased for use."  *Id.*, § 17.45(2).  Because Williams used the loan to purchase goods or services, the DTPA applies.

---

[10]  A consumer is "an individual who seeks or acquires by purchase or lease any goods or services." TEX. BUS. & COM. CODE § 17.45(4).

Williams alleges that the lender defendants violated the DTPA because they accelerated the Note and foreclosed on Williams's property without giving him the opportunity to cure.  Williams alleges that not giving him the opportunity to cure was "unconscionable."  Under the DTPA, a person may bring an action for "any unconscionable action or course of action by any person."  TEX. BUS. & COM. CODE § 17.50(a)(3).

The loan documents clearly stated that notice of acceleration was not required if Williams defaulted on his payments.  (Docket Entry No. 6, Ex. 1 at 1).  In addition, the record shows that the lender defendants gave Williams notice of acceleration.  Williams received notice of his default on March 13, 2006.  A letter sent from the lender defendants stated that Williams had defaulted in his payments, that the note was accelerated, and that a foreclosure sale would occur on April 4, 2006.[11]  The lender defendants gave Williams notice of foreclosure more than twenty days before the foreclosure sale, pursuant to TEX. PROP. CODE § 51.002(d).[12]  The record shows that Williams had ample opportunity to cure. The claim of a DTPA violation based on the lack of notice of acceleration is without basis as a matter of law.

---

[11]  "Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of the default, the Mortgagee has elected to accelerate the maturity of the debt."  (Docket Entry No.6, Ex.8).

[12]  "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien."  TEX. PROP. CODE § 51.002(d).

In addition, Williams's DTPA claim is barred by the two-year statute of limitations:

> All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

TEX. BUS. & COM. CODE § 17.56(a).  Williams's filed his DTPA claim eleven years after the violation, well past the statute of limitations.  The lender defendants are entitled to summary judgment on this claim.

### J.    The Unfairness Allegation Claim

Williams alleges that the "lender's practice of nondisclosure is offensive to society's sense of justice; the practice offends public policy, taking advantage of the elderly, the practice is immoral, unethical . . ."  (Docket Entry No.1, Ex. C–1 at 31).  A general claim of "unfairness" is not a sufficient basis for relief.  The defendants are entitled to summary judgment on this claim.

## IV.    Conclusion

The lender defendants' summary judgment motion is granted on all claims.  This case is dismissed by separate order.[13]

SIGNED on July 18, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[13] Williams's claims against the Secretary of Veterans Affairs are dismissed without prejudice for failure to effect service.  The dismissal of a defendant named in the complaint but not served with process results in the dismissal without prejudice.  *See Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987).